KAREN P. HEWITT
United States Attorney
CHRISTOPHER M. ALEXANDER
Assistant U.S. Attorney
California Bar. No. 201352
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7425 /(619) 235-2757 (Fax)
Email: Christopher.M.Alexander@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ADAN GUERRERO-FLORES,<br><br>Defendant. | Criminal Case No. 08CR0718-W<br><br>HEARING DATE: May 5, 2008<br>TIME: 2:00 p.m.<br><br>UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS:<br><br>(1) COMPEL DISCOVERY/PRESERVE EVIDENCE;<br>(2) SUPPRESS FIELD STATEMENTS;<br>(3) DISMISS DUE TO FAILURE TO ALLEGE ALL ELEMENTS;<br>(4) DISMISS DUE TO GRAND JURY INSTRUCTIONS;<br>(5) FOR LEAVE TO FILE FURTHER MOTIONS.<br><br>TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Christopher M. Alexander, Assistant United States Attorney, and hereby files its Response and Opposition to Defendants' above-referenced motions. This Response and Opposition is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

**I**

**STATEMENT OF THE CASE**

On March 12, 2008, a federal grand jury in the Southern District of California returned an Indictment charging Defendant Adan Guerrero-Flores ("Defendant") with being a deported alien found attempting to enter the United States after deportation in violation of 8 U.S.C. § 1326. On March 13, 2008, Defendant was arraigned and entered a not guilty plea. The Court set a motion setting date for March 24, 2008. At the motion setting, the Court set a motion hearing date for May 5, 2008.

On April 14, 2008, Defendant filed motions to compel discovery, suppress statements, dismiss the indictment on various grounds, and for leave to file further motions. The United States now responds.

**II**

**STATEMENT OF FACTS**

**A. The Instant Offense**

On February 11, 2008, at approximately 5:50 p.m., the Remote Video Surveillance System Operator ("RVSSO") observed a group of four individuals climb over the international border fence and enter the United States west of Calexico, California. The RVSSO requested assistance and maintained a visual of the group. Border Patrol Agent J. Saldana responded. Agent Saldana located the group and identified himself as a Border Patrol Agent. One of the individuals identified himself as Defendant Adan Guerrero-Flores. Through formal questioning, Agent Saldana was able to ascertain that he was in the United States illegally and that he did not have proper immigration documents to be in or to remain in the United States legally. Agent Saldana advised him of his rights as per service form I-826, in the Spanish language. Defendant was transported to the El Centro, California Border Patrol station for further processing.

At the El Centro Station, Defendant's biographical information and fingerprints were entered into the ENFORCE/IDENT/IAFIS Systems. IAFIS indicated Defendant had been previously deported and was removed from the United States on August 15, 2002.

Defendant was read his Miranda rights on February 12, 2008 at 7:45 a.m. by Agent Y. Lee and witnessed by Agent E. Vargas. Defendant appeared and claimed to be in good physical health. Defendant stated that he understood his rights and that he was willing to answer questions without the presence of a lawyer. Border Patrol Agent Y. Lee completed a form I-215B (record of sworn statement) noting Defendant's responses.

Defendant freely admitted the following: (1) Defendant is a Mexican citizen; (2) Defendant did not have any documents to be in or remain in the United States legally; (3) Defendant last entered the United States by walking near the fence; (4) Defendant was previously deported; (5) Defendant had neither sought nor received permission from the Attorney General or the Secretary of the Department of Homeland Security to re-enter the United States; (6) Defendant intended to travel to anyplace where he could find work; and (7) Defendant had no fear of persecution upon being returned to Mexico.

Defendant declined to speak with the Mexican consulate.

### B. Defendant's Criminal and Immigration History

Defendant was convicted on April 9, 2003, of indecent liberties with a child in violation of North Carolina GS14-202.1 and received 15 months in prison. Defendant was also convicted on June 6, 2002, of assault on a female in violation of North Carolina GS14-33(c)(2) and received 60 days in jail. Additionally, on August 23, 2002, Defendant was convicted of interfering with emergency communications in violation of North Carolina GS5014-28b.2 and received 75 days in jail.

Concerning his immigration history, on August 15, 2002, Defendant was ordered deported. His last physically removal from the United States to Mexico was on January 28, 2004.

## III

## MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

The United States has and will continue to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (19 U.S.C. § 3500), Rule 16 of the Federal Rules of Criminal Procedure, and Rule 26.2 of the Federal Rules of Criminal Procedure. The United States

has already delivered 26 pages and one DVD of discovery to defense counsel including investigative reports and Defendant's statements on February 26, 2008. Nevertheless, Defendant makes a series of discovery requests. The following is the United States' response to Defendant's requests.

Initially, Defendant requests the following: (1) the deportation tapes; (2) all deportation proceeding documents the United States intends to rely upon at trial; (3) a full copy of the A-File; and (4) the opportunity to inspect the Alien Registration File ("A-File") associated with Defendant. The United States will produce (1) the deportation tapes and (2) all deportation proceeding documents the United States intends to rely upon at trial. However, the United States objects to Defendant's other requests.

Discoverable information is equally available to Defendant from the immigration court or through a Freedom of Information Act request served upon the Department of Homeland Security. Even if Defendant could not ascertain the A-File through such a request, the A-File is not Rule 16 discoverable information. The A-File contains information that is not discoverable like internal government documents and witness statements. See Fed. R. Crim. P. 16(a)(2). Witness statements would not be subject to production until after the witness for the United States testifies and provided that a "motion" is made by Defendant. See Fed. R. Crim. P. 16(a)(2) and 26.2. Thus, the Court should not order the A-File associated with Defendant to be copied or disclosed in its entirety.

Again, the United States will produce documents it intends to use in its case-in-chief. Evidence is material under Brady only if there is a reasonable probability that had it been disclosed to the defense, the result of the proceeding would have been different. See United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001). However, Defendant has not shown how documents in the A-File are material.

In an effort to create materiality, Defendant claims that he will not be able to challenge the thoroughness of the search for his application to reenter the United States. Any cross-examination regarding the possibility of a nonexistent application for permission is irrelevant. In United States v. Rodriguez-Rodriguez, 393 F.3d 849, 856 (9th Cir. 2005), the defendant sought to elicit testimony on cross-examination from a witness for the United States regarding the following claims: (1) INS computers are not fully interactive with other federal agencies' computers; (2) over 2 million documents filed by immigrants have been lost or forgotten; (3) other federal agencies have the ability and authority

to apply for an immigrant to come into the United States; and (4) the custodian never checked with the other federal agencies to inquire about documents relating to the defendant. Judge Lorenz sustained objections to this line of cross-examination finding that it was irrelevant. Id. The Ninth Circuit agreed stating that "[n]one of that information is relevant on the facts of this case, because it is uncontested that [the defendant] never made any application to the INS or any other federal agency." Id.

As in Rodriguez, Defendant has not presented any evidence that he had applied for reentry. As in Rodriguez, any testimony from witnesses for the United States regarding the types of checks performed to show the lack of an application for reentry would be irrelevant.

This type of cross-examination is also irrelevant to this § 1326 prosecution. The Ninth Circuit has stated what is required for permission to reapply:

> The INS has promulgated regulations that govern the process by which the Attorney General will "[c]onsent to [a deported alien] reapply[ing] for admission[.]" 8 C.F.R. § 212.2. These regulations include the requirement that a deported alien must have remained out-side of the United States for a minimum of five consecutive years. Id. § 212.2(a). Pina-Jaime did not meet this requirement. Nor did he submit the required form I-212 to the INS to obtain consent of the Attorney General to reapply for admission. See United States v. Sanchez-Milam, 305 F.3d 310, 312-13 (5th Cir. 2002), cert. denied, 537 U.S. 1139, 154 L. Ed. 2d 834, 123 S. Ct. 932 (2003). Accordingly, the Attorney General did not "expressly consent[] to [Pina-Jaime's] reapplying for admission" as required by the statute. See 8 U.S.C. § 1326(a)(2).

United States v. Pina-Jaime, 332 F.3d 609, 611-12 (9th Cir. 2003). There is no evidence supporting that Defendant has done so. Accordingly, the thoroughness of the search is not a basis for production of the entire A-File.

Next, Defendant argues that the entire A-File is necessary to challenge his deportation. Obviously, the United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976) to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case. As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality. [Citation omitted.]

Id. at 774-775.

The United States is not obligated under Brady to furnish a defendant with information which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant. The United States will provide Defendant a copy of any requested relevant deportation document. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

Finally, Defendant does not own the A-File. It is an agency record. Cf. United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997) (noting that A-File documents are admissible as public records). Should the Court order inspection of limited documents from the A-File, the United States will facilitate the inspection as it has in other cases.

1. Statements of Defendant

The United States has already produced reports disclosing the substance of Defendant's oral and written statements. The United States will continue to produce discovery related to Defendant's statements made in response to questions by agents. Relevant oral statements of Defendant are included in the reports already provided. Agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.

A defendant is not entitled to rough notes because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. United States v. Bobadilla-Lopez, 954 F.2d 519 (9th Cir. 1992); United States v. Spencer, 618 F.2d 605 (9th Cir. 1980); see also United States v. Alvarez, 86 F.3d 901, 906 (9th Cir. 1996); United States v. Griffin, 659 F.2d 932 (9th Cir. 1981).

2. Arrest Reports and Notes

The United States has provided the Defendant with arrest reports. As noted previously, agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery. The United States is unaware of any dispatch tapes regarding Defendant's apprehension.

/ / /

/ / /

3. Brady Material

Again, the United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976) to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case. As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality. [Citation omitted.]

Id. at 774-775.

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

4. Sentencing Information

Defendant claims that the United States must disclose any information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation.

The United States is not obligated under Brady to furnish a defendant with information which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the

defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand for this information is premature.

5. Defendant's Prior Record

The United States has already provided Defendant with a copy of his criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(D).

6. Proposed 404(b) Evidence

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of Evidence 404(b) or 609, the United States will provide Defendant with notice of its proposed use of such evidence and information about such bad act at the time the United States' trial memorandum is filed. However, to avoid any arguments concerning lack of notice, the United States intends to introduce Defendant's prior immigration contacts as evidence of intent to enter the United States, alienage, prior deportation, and lack of application for admission. Defendant's prior apprehensions have already been produced. Moreover, Defendant's convictions listed in the criminal history report previously produced will be introduced to impeach him should he testify.

Defendant also requests TECS reports. The United States objects to this request. The United States does not intend to provide Defendant with TECS information unless the United States decides to introduce such evidence pursuant to Rule 404(b). See United States v. Vega, 188 F.3d 1150, 1153 (9th Cir. 1999). Otherwise, such evidence is only available to the defendant if it is "relevant to the development of a possible defense," United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990) (citations and quotations omitted), or it "enable[s] the accused to substantially alter the quantum of proof in his favor." United States v. Marshall, 532 F.2d 1279,1285 (9th Cir. 1976). Defendant has shown neither.

7. Evidence Seized

The United States has, and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

8. Preservation of Evidence

The United States will preserve all evidence to which Defendant is entitled to pursuant to the relevant discovery rules. However, the United States objects to Defendant's blanket request to preserve all physical evidence. For example, Defendant requests preservation of narcotics. What narcotics?

The United States has, and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs. The United States has made the evidence available to Defendant and Defendant's investigators and will comply with any request for inspection.

9. Henthorn Material

The United States will review the personnel files of all federal law enforcement individuals who will be called as witnesses in this case for Brady material. Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and United States v. Cadet, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable to the defense that meets the appropriate standard of materiality . . ." United States v. Cadet, 727 F.2d at 1467, 1468. Further, if counsel for the United States is uncertain about the materiality of the information within its possession in such personnel files, the information will be submitted to the Court for in camera inspection and review.

/ / /

/ / /

10. Tangible Objects

Again, the United States is well aware of and will fully perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all documents known or believed to exist, which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case.

The United States has, and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

11. Expert Witnesses

Defendant requests written reports and summaries of any expert testimony pursuant to Federal Rules of Criminal Procedure 16(a)(1)(G). The United States will disclose to Defendant the name, qualifications, and a written summary of testimony of any expert the United States intends to use during its case-in-chief at trial pursuant to Fed. R. Evid. 702, 703, or 705.

At trial, the United States will offer the testimony of a Fingerprint Expert to establish Defendant's identity and prior history. The United States will provide a summary, and qualifications of the expert when they are available.

Although not expected to give expert opinions based upon specialized knowledge, the United States will also offer the testimony of a records custodian to introduce documents from Defendant's A-File. See Fed. R. Evid. 701 (such testimony is "helpful to a clear understanding of the determination of a fact in issue"); United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995) (in a drug case, the court found that "[t]hese observations are common enough and require such a limited amount of expertise, if any, that they can, indeed, be deemed lay witness opinion"); United States v. Loyola-Dominguez, 125 F.3d 1315, 1317 (9th Cir. 1997) (agent "served as the conduit through which the

government introduced documents from INS' Alien Registry File".). This testimony will consist of explaining the purpose of the A-File, what documents are contained within the A-File, and the purpose of those documents.

12. Bias or Motive to Lie

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

13-14. Impeachment and Evidence of Criminal Investigation

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976), cert. denied, 429 U.S. 1074 (1977). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

15. Evidence Affecting Perception

The United States is unaware of any evidence indicating that a prospective witness has a perception, recollection, communication, or truth telling problem.

16. Witness Addresses

The United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the United States' trial memorandum is filed, although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987). Defendant, however, is not entitled to the production of addresses or phone numbers of possible witnesses of the United States. See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977). Defendant has already received access to the names of potential witnesses in this case in the investigative reports previously provided to him.

17. Witnesses Favorable to Defendant

The United States is not aware of any witness who made a favorable statement concerning Defendant.

18. Statements Favorable to Defendant

The United States is not aware of any witness who made a favorable statement concerning Defendant.

19. Jencks Act Material

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and the Jencks Act.

20. Giglio Information

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v. United States, 405 U.S. 150 (1972).

21. Agreements Between the United States and Witnesses

The United States is unaware of any agreements between the United States and any witness who may testify.

22-23. Informants and Cooperating Witnesses

Defendant incorrectly asserts that Roviaro v. United States, 353 U.S. 52 (1957), establishes a per se rule that the United States must disclose the identity and location of confidential informants used in a case. Rather, the United States Supreme Court held that disclosure of an informer's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. Id. at 60-61. Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Id. at 454. As such, the United States is not obligated to make such a disclosure, if there is in fact anything to disclosure, at this point in the case.

That being said, the United States is unaware of the existence of an informant in this case. However, as previously stated, the United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the United States' trial memorandum is filed, although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987). Defendant, however, is not entitled to the production of addresses or phone numbers of possible witnesses of the United States. See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977). Defendant has already received access to the names of potential witnesses in this case in the investigative reports previously provided to him.

24. Reports of Scientific Tests or Examinations

The United States will comply with its obligations pursuant to Rule 16. At trial, the United States intends to offer testimony of a fingerprint expert to identify Defendant as the person who was previously deported. The United States will provide the qualifications of the experts, if any. The United States will provide a summary of his report when it is available.

25. Residual Requests

The United States objects to this request. The United States has and will continue to comply with its discovery obligations.

## IV

## DEFENDANT'S MOTION TO SUPPRESS STATEMENTS SHOULD BE DENIED

Defendant moves to suppress his statements. Defendant argues that his field statements should be suppressed because he was in custody. Defendant also moves for suppression of his post-arrest statements based upon the failure to take his statement within six hours of arrest and failure to appear before the magistrate judge faster. All of these arguments fail.

### A. Defendant's Pre-arrest Statements Should Not Be Suppressed

Defendant argues that his statements made prior to his arrest were made while in custody. In Miranda v. Arizona, 396 U.S. 868 (1969), the Supreme Court held that under the Fourth Amendment a person must be advised of his rights prior to incriminating questioning after custodial arrest.

Defendant's arguments are merit less for three reasons. First, Defendant was not in custody when he was questioned. Second, Defendant was not subjected to incriminating questioning while in custody. Third, if Defendant was subjected to a stop, reasonable suspicion supported the stop.

First, to determine whether a person is in custody for purposes of Miranda, a court looks to the circumstances surrounding the interrogation. United States v. Bravo, 295 F.3d 1002 (9th Cir. 2002) ("whether an invidividual in custody depends upon the objective circumstances of the situation, or whether "'a reasonable innocent person . . . would conclude that after brief questioning he or she would not be free to leave."'"). Contrary to Defendant's declaration, he was questioned before being placed in any Border Patrol vehicle. Since Defendant was not in custody during his initial questioning, there was no need for Miranda warnings.

Second, detaining a person for routine border questioning is not custodial. See United States v. Galindo-Gallegos, 244 F.3d 728, 731 (9th Cir.), modified by 255 F.3d 1154 (9th Cir. 2001). Even if placed in a Border Patrol vehicle and not free to leave, the agent's actions were proper. Consistent with Galindo-Gallegos, Defendant was detained and asked immigration questions. As such, there is no Miranda violation.

Third, even if he was in custody, an investigatory detention, a brief seizure by police based on reasonable suspicion of criminal activity, is an exception to the probable cause requirement of the Fourth Amendment. See Terry v. Ohio, 392 U.S. 1, 26 (1968).

Here, as explained earlier, reasonable suspicion existed to justify the stop. Defendant was observed jumping the border fence and entering the United States. Defendant responded that he was a not a United States citizen. Pennsylvania v. Muniz, 496 U.S. 582, 601-04 (1990) (even if incriminating, answers elicited prior to Miranda warnings during procedures "necessarily attendant to the police procedure [are] held by the court to be legitimate" and admissible). Following discovery of Defendant's illegal attempt to enter the United States at the station, Agents timely advised Defendant that he was under arrest. Defendant was also advised of his Miranda warnings, which he waived. All statements prior to Defendant's arrest are admissible; and this Court should deny the motion to suppress any statements made prior to arrest.

/ / /

**B. Routine Booking Information**

Upon detaining Defendant, Agents asked Defendant routine booking questions for the purpose of obtaining background biographical information for filling out a personal history report and a booking slip. The Supreme Court has held that routine booking questions reasonably related to law enforcement record keeping concerns are not testimony and are therefore outside the Fifth Amendment privilege that Miranda is designed to protect. See Pennsylvania v. Muniz, 496 U.S. 582, 600-602 (1990). "Routine gathering of background biographical data does not constitute interrogation sufficient to trigger constitutional protections." United States v. Perez, 776 F.2d 797, 799 (9th Cir. 1985). Citing Rhode Island v. Innis, 446 U.S. 291, 301 (1980), the Ninth Circuit has held that pre-Miranda questions regarding "where and when" a defendant was born "are normal questions 'attendant to arrest and custody,' so Miranda is not implicated." United States v. Arellano-Ochoa, 461 F.3d 1142, 1146 (9th Cir. 2006) (allowing the defendant's statements where he was charged with being a non-immigrant alien in possession of a firearm). Consistent with Muniz and Perez, the Ninth Circuit has allowed police officers to testify in § 1326 prosecutions about a defendant's statements of alienage taken during the booking process. See United States v. Salgado, 292 F.3d 1169, 1174 (9th Cir. 2002). Defendant's responses to the Agents' questions therefore should be admitted.

**C. Six-Hour Rule Safe Harbor Does Not Require Exclusion**

Defendant argues that his statements should be suppressed because they were made outside of the six-hour safe harbor. As Defendant correctly points out, the Federal Rules of Criminal Procedure require that agents take an arrested defendant before a magistrate judge "without unnecessary delay." Fed. R. Crim. P. 5(a). The "safe-harbor" provision, section 3501(c), provides that in evaluating whether a statement is voluntary, courts should not invalidate a confession taken within six hours after arrest or other detention solely on the basis of delay. 18 U.S.C. § 3501(c); United States v. Van Poyck, 77 F.3d 285, 288 (9th Cir. 1996). Section 3501(b) directs courts to consider various factors in determining whether a suspect provided a voluntary confession, including "the time elapsing between arrest and arraignment of the defendant making the confession . . . ." 18 U.S.C. § 3501(b) (timing is just one factor that "need not be conclusive").

"Statements made outside the six- hour 'safe harbor' may be excluded solely for delay, but a court is not obligated to do so." Van Poyck, 77 F.3d at 288 (citations omitted). However, and "[t]he defendant bears the burden of proving grounds for exclusion" under section 3501(c). Van Poyck, 77 F.3d at 288 (citing United States v. Halbert, 436 F.2d 1226, 1230 (9th Cir. 1970)). "We will admit a statement made outside of the safe harbor if the delay was reasonable or if public policy concerns weigh in favor of admission." United States v. Padilla-Mendoza, 157 F.3d 730, 731 (9th Cir. 1998) (citing Van Poyck, 77 F.3d at 289). Assuming his confession fell outside the safe harbor, Defendant fails to carry his burden under section 3501(c) because he can show neither unreasonable delay nor public policy concerns weighing in favor of suppression.

First, as may be shown at any future evidentiary hearing, the delay was reasonable. See Padilla-Mendoza, 157 F.3d at 732 (finding no unreasonable delay where agent processed prior cases before turning to defendant, interviewed defendant's passenger before defendant, interviewed defendant eight hours after his arrest, and brought defendant before magistrate on the day following his arrest).[1/]

Second, public policy concerns favor admission of Defendant's statements. Relevant public policy concerns include discouraging officers from unnecessarily delaying arraignments, preventing the admission of involuntary confessions, and encouraging early processing of defendants. See Padilla-Mendoza, 157 F.3d at 731. The agents followed standard protocol in questioning the aliens and brought Defendant before a magistrate within a reasonable time. As in Van Poyck, "[t]his is not a case where the officers intentionally postponed arraignment so they could interrogate the defendant." Van Poyck, 77 F.3d at 290; see also Padilla- Mendoza, 157 F.3d at 732 (holding that the agent's processing of prior cases and related activities were not an "attempt to delay [defendant's] presentment to a magistrate in order to obtain a better interview"). Accordingly, excluding Defendant's statements would in no way discourage the unnecessary delay of arraignments.

With regard to the second public policy concern, all of the factors bearing on voluntariness support the conclusion that Defendant voluntarily made statements. Defendant was alert, he

---

[1/] The Ninth Circuit has held that even overnight or weekend delays are not unreasonable. See, e.g., Van Poyck, 77 F.3d at 289 (finding weekend delay reasonable where no magistrate available prior to Monday); United States v. Fouche, 776 F.3d 1398 (9th Cir. 1985) (finding overnight portion of 20-hour delay reasonable under the circumstances); United States v. Manuel, 706 F.2d 908 (9th Cir. 1983) (same).

acknowledged, and waived his Miranda rights. Defendant voluntarily made statements and public policy supports the statements' admission.

Finally, Defendant was processed as early as practicable. Excluding Defendant's statements would not further the public policy of encouraging early processing of defendants.

**D. The 48-Hour Rule was Not Violated**

Without citing Riverside v. McLaughlin, 500 U.S. 44 (1991), Defendant argues that the Court should suppress his statements because he was not presented to a magistrate sooner.

As noted previously, Federal Rule of Criminal Procedure 5(a) requires "an officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate judge . . . ." See also Van Poyck, 77 F.3d at 288. This requirement is balanced against the presumption that a complaint reviewed by a magistrate judge within 48 hours of arrest is presumed reasonable. Riverside v. McLaughlin, 500 U.S. 44, 56 (1991). Defendant bears "the burden of showing that any delay was unreasonable." Id. However, "the normal remedy for violation of Rule 5(a) is suppression of evidence obtained during the unreasonable delay." See United States v. Studley, 783 F.2d 934, 937 n.2 (9th Cir. 1986). In other words, the court may suppress statements made after 48 hours, not all statements.

Here, the extraordinary remedy requested by Defendant is not warranted. As for Defendant, the earliest that he was formally arrested on February 11, 2008 at approximately 5:50 p.m. At approximately 7:45 a.m. on February 12, 2008, Agent Y. Lee advised Defendant of his Miranda rights which Defendant waived. Prior to 5:00 p.m. on February 13, 2008, a complaint was submitted to United States Magistrate Judge Peter Lewis. Magistrate Judge Lewis reviewed the probable cause statement and signed a statement acknowledging the existence of probable cause. Defendant then made his initial appearance on February 13, 2008 before Magistrate Judge Lewis. Thus, the presumption is that the arrest was reasonable.

Given the facts of this case, Defendant cannot show that there was an unreasonable delay in having him appear before a magistrate.

/ / /

/ / /

**V**

**DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO ALLEGE ALL ELEMENTS IS WITHOUT MERIT**

Defendant argues that the Indictment must be dismissed since it fails to allege an overt act. The Supreme Court's recent decision in United States v. Resendiz-Ponce, 127 S. Ct. 782, 788 (2007), forecloses Defendant's argument that the Indictment is insufficient as a matter of law due to its failure to allege an overt act. "[I]t was enough for the indictment in this case to point to the relevant criminal statute and allege that '[o]n or about June 1, 2003,' respondent 'attempted to enter the United States of America at or near San Luis in the District of Arizona.'" Id. The Indictment here more than complies with the Supreme Court's decision. It should come as no surprise that Defendant cites the Ninth Circuit opinion in Resendiz-Ponce, but not the Supreme Court case that overruled it.

**VI**

**THE GRAND JURY WAS PROPERLY INSTRUCTED**

Defendant makes two challenges contentions relating to instructions given to the grand jury during its impanelment by District Judge Larry A. Burns. Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper warranting dismissal of the Indictment.

In making his arguments concerning the instructions Defendant urges this Court to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which were discussed in United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992). Concerning the first attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its supervising powers over grand jury procedures. This is a practice the Supreme Court discourages as Defendant acknowledges, citing United States v. Williams, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure."). Isgro reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment. The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." Before it may invoke this power,

> a court must first find that the defendant is actually prejudiced by the misconduct. Absent such prejudice-that is, absent "'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"-a dismissal is not warranted.

974 F.2d at 1094 (citation omitted, emphasis added). Concerning the second attacked instruction, in an attempt to dodge the holding in Williams, Defendant appears to base his contentions on the Constitution as a reason to dismiss the Indictment. Concerning that kind of a contention Isgro stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

974 F.2d at 1094 (citation omitted).

The portions of the two relevant instructions approved in Navarro-Vargas were:

> You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

> The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems. It is entirely proper that you should receive this assistance. If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'" 408 F.3d at 1203 (footnote omitted). "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law; it receives no briefs or arguments from the parties. The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'" Id.

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution. The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . . The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207. Id. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other." Id.

Any instruction that Assistant United States Attorneys are duty-bound to present evidence that cuts against returning an indictment is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it." (emphasis added)); see also United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) (" . . . prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing Williams).

However, the analysis does not stop there. Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand jury. As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[2] Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

> In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

---

[2] The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html.

(Emphasis added.)[3/] This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233 ." (Emphasis added.)[4/]

The fact that Judge Burns' statement contradicts Williams, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant. If "substantial" exculpatory evidence exists, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation. There is nothing wrong with a grand juror inferring that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution. In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does

---

[3/] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm. Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, as the District Judge overseeing the grand jury, he could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[4/] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly, this new section does not bestow any procedural or substantive rights on defendants.

> Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E." See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

not require dismissal of the indictment. 974 F.2d at 1096 ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations."). Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not render the instructions unconstitutional. The grand jurors were instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by Navarro-Vargas. 408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor"). But he also repeatedly "remind[ed] the grand jury that it stands between the government and the accused and is independent," which was also required by Navarro-Vargas. 408 F.3d at 1207. In this context, the unnecessary "duty-bound" statement does not render the instructions constitutionally defective requiring dismissal of this Indictment.

The "duty bound" statement does not indicate that the "'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed." Isgro, 974 F.2d at 1094 (citation omitted). Therefore, this Indictment, or any other indictment, need not be dismissed.

**VII**

**DEFENDANT'S MOTION FOR LEAVE TO FILE FURTHER MOTIONS**

Defendant's motion for leave to file further motions should be denied except to the extent that such motions are based on new discovery.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## VIII

## CONCLUSION

For the foregoing reasons, the United States asks that the Court deny Defendant's motions, except where unopposed, limit further motions to those based on new law or facts.

DATED: April 29, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

*s/Christopher M. Alexander*

CHRISTOPHER M. ALEXANADER

Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: Christopher.M.Alexander@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ADAN GUERRERO-FLORES,<br>Defendant. | Criminal Case No. 08CR0718-W<br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, CHRISTOPHER ALEXANDER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Response to Defendant's Motions to (1) compel discovery/preserve evidence, (2) suppress various evidence, and (3) various grounds to dismiss the Indictment, together with statement of facts, memorandum of points and authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Candis Mithchell, Esq.
   Atty for Defendant

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 29, 2008.

*s/Christopher M. Alexander*

CHRISTOPHER M. ALEXANDER